Appellant, Mr. Wayne for the Appellant, Ms. Kelly for the Appellee. May it please the Court, Charles Wayne for the Appellant, Brianna Meadows. The conviction below should be reversed because the District Court erred in denying the motion to dismiss  and was a product of prosecutorial vindictiveness. Now, the burden was on the Appellant below to prove either actual vindictiveness or evidence that there was a realistic likelihood of vindictiveness that raised a presumption that the government had to rebut. And this Court has recognized in the Meyer case and other cases that there's a human dynamic to the prosecutorial vindictiveness doctrine. That is, the prosecutor may have a personal stake and a motivation to engage in self-vindication. And that's what we have here. There are three circumstances under which prosecutorial vindictiveness can be found. And those three circumstances are, in order to be considered together, district treatment of the defendant, whether a charging decision is made prior to getting all the facts, and whether the prosecution is a run-of-the-mill routine or involves a run-of-the-mill routine invocation of rights, usually in a plea bargain situation. Here, the District Court made a fundamental erroneous assumption that this was, in fact, a routine, run-of-the-mill plea negotiation. In such a case where there are negotiations but no plea agreement that leads to more serious charges, that's the normal course of events. But that did not happen here. In fact, the District Court ignored the long-involved history between the U.S. Attorney's Office and the defendant, Ms. Meadows. And under any rational view, the evidence presented to the district judge below is clear that Ms. Meadows was a thorn in the side of the U.S. Attorney's Office. There was a six-year period where Ms. Meadows repeatedly asserted her Fifth Amendment rights to due process against self-incrimination and her Sixth Amendment right to jury trial. She refused to cooperate in a homicide investigation, and the government charged her with obstruction of justice and being an accessory after the fact. But the government never followed through. They charged, they dismissed twice on the eve of trial. There was an allegation of bribery of a corrections officer in connection with smuggling contraband into the D.C. jail. Again, no charges were brought. And at the motions hearing, the district judge said to the prosecutor, who was the prosecutor, by the way, who was in charge of a very elaborate sting operation regarding the smuggling of contraband into the D.C. jail, and he was the prosecutor who prosecuted Ms. Meadows below for unlawfully obtaining unemployment benefits, the judge said, so why do you not charge her with that? Meaning obstruction of justice, bribery, smuggling of contraband. And the AUSA, Seth Waxman, said, we may, but never did. And the record's not clear whether the failure to prosecute for that was a result of either lack of evidence or inattention, inertia. But in a moment of candor, Mr. Waxman said to the court below that Ms. Meadows was, quote, the only one still hanging out there, and we can't walk away from that. Now, what happened was there were plea offers in this case. There were two. And clearly the government felt that they were more than fair. One was a plea to a felony for the unemployment benefits. Can I interrupt you for a minute? You may, of course. Other than Meyer, do you know of any case in which courts found vindictiveness? I'm sorry, found? Other than Meyer. Found that there's been vindictive prosecution? Prosecutorial misconduct? Yeah. Prosecutorial? No. No. No. Well, that's federal courts, right? Federal courts. Federal courts, correct. Is this the most vindictive prosecutor in the history of federal prosecution, or is it just no one has been smart enough to argue vindictiveness before? Well, I think as we said in our brief, I don't think that Mr. Waxman is a candidate to be Inspector Javert, but there is no question. I thought you said he was Inspector Javert. It sounded to me. Well, there is no question that he had her in his sights. I know, but if there's only one case, and that case is one which has enormous First Amendment overtones having to do with protests and then an alleged effort to bollocks up the courts by putting lots of cases into them, this is not that kind of case at all. So if we're going to come up with a case of prosecutorial vindictiveness, is this really the poster child? Well, I think you need a very specific, unusual set of facts. We have that here. We have a situation where what she was prosecuted for was something that the U.S. Attorney's Office had declined to prosecute entirely during the previous four years. Is your view that they can't prosecute people who's, assuming she's guilty of $14,000 of theft from the United States, that those things just can't be prosecuted because they didn't prosecute them before? No. And is it your position that if they think she's actually a murderer, I appreciate that's not what this case is, but they can't prove it. She actually was? A murderer, just a hypothetical.  Could they not prosecute her for the $13,000 theft? Not just because they think she's a murderer. In fact, we don't have those facts. You make a point that they think she was guilty of other things which they were unable to prove, and therefore they prosecuted her for this. That's not enough to cause vindictiveness, is it? It is not. What is enough is her persistent assertion of her Fifth Amendment right to privilege against self-incrimination, her Fifth Amendment right to due process, and her Sixth Amendment right to jury trial. You argue you can be as guilty as you like of a crime, but you get a reward if you made a sufficient nuisance of yourself entirely within your rights. Is that the doctrine? I would say that the doctrine is, I mean, yes, by definition, I think that a defendant in this type of situation is making a nuisance of himself or herself as far as the U.S. Attorney's Office is concerned, and we say that she was a thorn in their side. But if the reason why they're upset is because, in their view, she's not playing ball. In her view, and it should be the view of this Court, she's exercising her constitutional rights. She doesn't have to cooperate. She doesn't have to help the prosecutor in the homicide investigation. Well, the government says that's not the reason they prosecuted her. You say it is. Even if that were a ground, what would we do next? The burden is on the defendant. You can't prove that this is the reason that they prosecuted her. That is true. So that's why there's a two-part test under Meyer and the other cases, which says that a defendant must show that it's more likely than not that there was prosecutorial activity. Right, and the judge said it wasn't more likely than not. And your view is that that is clearly erroneous. That's correct. On what ground can we say it's clearly erroneous, not only that that wasn't the reason, but rather that it wasn't more likely than not that that was the reason? How do we go about doing that? I'm sorry, Your Honor, I'm not sure in what sense how do you go about doing that. Well, I mean, assume we have her saying, you saying, but without evidence other than circumstantial, that this is the reason that they prosecuted her because they didn't like her being a thorn in their side. And you have them saying that's not the reason. That's correct. Okay, so now we have a, I hate the gender aspect of this, she said, he said, he said, she said, whatever. Normally that's not enough to make more likely than not without sort of analysis of credibility and other kind of things, which we don't have here with respect to this. Well, I think that, I think that the district court's view of the evidence, and although there's a certain amount of discretion, obviously, that the court below has, it is clearly, she made a clearly erroneous ruling based on the state of the evidence. But if they were to accept your argument about the law, forget about the facts for a moment, and applied it to this case, we would still need to conclude more likely than not that the reason for the prosecution was vindictiveness, right? Correct. I don't, I don't see how we can do that without more evidence than you have given us. Well, I'm, of course, limited to what's below, number one. Yes, yes. And I don't think that there was a problem with the evidence below. I think that counsel for Ms. Meadows below put on significant evidence, including the, in the four years prior, the failure to prosecute. It was all handled administratively. The fact that the amount had already been either recouped and or repaid. Well, not, apparently not until after the threat of prosecution had proceeded past dismissal of a motion to dismiss. Partially recouped prior to then, fully repaid after that, that's correct. There's another issue with regard to that, of course. Yeah. But, I mean, here we have, okay, talking about Inspector Javert, we have the same prosecutor who was in charge of the very large sting operation. And now he's in federal court prosecuting a crime of six felonies, by the way, six felonies of someone of a type of crime that they had declined to prosecute 41 separate times in the preceding four years. So why is that not enough to raise? So was it vindictive prosecution to prosecute Al Capone for income tax evasion when they couldn't prosecute him for all the things that they thought he did and or that he got off every time they prosecuted him? And, by the way, Al Capone did not confess and he also asserted his Fifth Amendment rights. Would you say that that was a vindictive prosecution? No. And what's the difference? Well, the difference here is there's a direct, I don't know the full state of the record there, of course, but the causal link here clearly is the assertion of her rights, the fact that the prosecutor is the same person who was in charge of the larger investigation. Are you saying that Al Capone didn't assert his rights to not testify in the grand jury? No, of course he did. Okay. And was there not Elliot Ness, the same agent in all those cases, at least according to the movie? According to the movie, yes. All right. So if we take the facts as they were presented in the movie, which may or may not be true, but it's good for hypothetical, do you think it was a vindictive prosecution and Capone should have been released? No. What's your second argument? So I guess the argument here has to be, and I thought this is what the chief judge was getting at, for this court to write an opinion that says the district court clearly erred, we would have to say there was enough evidence here to raise a presumption. And the unrebutted evidence was that the government had never prosecuted disemployment benefits offense for an amount under $15,000. And although the prosecutor asserted they had, the prosecutor never offered such evidence. So from the district court's point of view of the balance of the evidence at that point, it was that she was charged with six felonies, even though the government was, I don't know if this is the right word, attaching her income tax refunds to recover the amounts that she owed. And that the district court, in evaluating the defense evidence, erred because there was no explanation for pursuing charges against your client, even though everything, all the trouble she caused the government was concluded, in the sense that her boyfriend had been convicted. He had also pled, I think, to the contraband at the correctional facility. And this evidence came about only as a result of what I'll call a new investigation by the FBI into contraband into the facility, and they discovered she had falsely represented who she was in order to gain access. That's a hard paragraph to write, isn't it? And I'm not accepting the notion that, it's interesting, the chief judge and I had no conversation prior to this oral argument about this case, but I did say to my law clerk, well, what about Al Capone? So that's the problem. If you were sitting in our shoes, much less the district court shoes, to write that paragraph. And I don't think we have to show that there's a long stream of prior cases. Cases have been reversed for a variety of reasons, and maybe vindictive prosecution wasn't a necessary aspect of that reversal. Well, Judge Rogers, here's what I would say. So the district court found the evidence that you're talking about, in terms of the failure to prosecute in the previous four years, found that to be compelling, that she worked herself around to a rationale that said, well, the defendant here is not similarly situated to these other defendants who they didn't prosecute. So the basis for the lack of similar situation is the fact that the U.S. Attorney's Office thought she was a bad person. Well, I thought your argument was she had no evidence of that. Correct. She has no evidence of that. That's why I say, that's what we said in our brief, the district court seemed to think that the prosecutor's discretion was similar to the district court's discretion in sentencing, which is you can consider all kinds of things. I mean, uncharged conduct and acquitted conduct. But our position is, is that the prosecutorial discretion is not so boundless that it's got to be circumscribed by the prosecutorial vindictiveness. I thought you said that it would have been okay to prosecute Al Capone for income tax evasion because they thought that he was a very bad man for other things that they couldn't prove. And that they were going to prosecute him for income tax evasion because that was easier. Do you agree with that? Or do you think they had to put out of their mind the murders, the gang wars, et cetera, in deciding whether to prosecute him? They did not have to put it out of their mind, but people back then as now are routinely prosecuted for income tax evasion. They are not routinely prosecuted in this district. But it is okay to prosecute, it was okay to prosecute him for a crime based on their view that he was a bad man and had done other crimes. I mean, this would be an amazing limitation on prosecutorial discretion if your position was they could only prosecute him for the hardest crimes and not for the lesser crimes. You're not saying that, are you? I'm not saying that. I'm saying the difference is that then as now people are prosecuted routinely for tax evasion. In this district they are not routinely prosecuted for receiving, for fraudulently receiving unemployment benefits. It's handled administratively. The only reason why it wasn't handled administratively with regard to her is because of the U.S. Attorney's Office view that she was a bad person. So your argument is about bad person-ness. That alone is enough to create vindictiveness. I thought your argument had to do with claims about the Fifth Amendment, claims about not cooperating, but your position now is that if the government has evidence, maybe not enough to prove, that a person is a terribly bad person and they've never asked the person to cooperate or anything else, and they decide to prosecute him for spitting on the sidewalk. Your position is they can't do that because they don't prosecute other people for spitting on the sidewalk? That is not my position. And I would say that one person's exercise of constitutional rights from the U.S. Attorney's Office's view is a refusal to reasonably play ball. And reasonably play ball means cooperating in an investigation. And she steadfastly refused to do that. Now on the question about whether they'd ever prosecuted before, I understood the government to say that your, not yours, but the appellant's position below was that there had been four cases where the government had prosecuted. Is that right? That is true. Prior to the four-year period. So they had data. Data was presented to the district judge about the four-year period preceding the indictment. And there were 117 cases. 41 referred to the U.S. Attorney's Office. None had been prosecuted in that four-year period. And when were the four prosecuted? Prior to the four-year period. So your position is not that the government never prosecutes, but that they hadn't prosecuted in the last four years? That is correct. They clearly, at some point, the U.S. Attorney's Office made a decision that not to prosecute this, that this would be handled administratively. That's the only way to explain their refusal to prosecute any one of the 41 referrals. And once the government makes a decision for four years not to prosecute, if that's what they did, they can't redo it? That is not my position. Please answer. That's not my position. I'm saying that they can't choose to prosecute for an improper purpose. And here there was an improper purpose. So how do you reconcile, as it were, what I see as the Supreme Court's elaboration of this principle of vindictive prosecution from sort of the North Carolina versus Pierce, up through Goodwin and Borkenheimer? And I read Borkenheimer to say pretty much everything is okay during sort of plea negotiations. I mean, if the government has evidence against you, probable cause, whatever its motivations may be, it's really irrelevant. This is a plea bargaining process, and the government can pursue you. And the prosecutor has broad discretion here. And the fact that one prosecutor decides to go down this road of the unemployment benefit, it's really irrelevant. That's the system we have, and that the defendant gets all his or her protections after being charged. And that was Myers. I mean, the exercise of constitutional rights came after the government had charged, and they said they wanted a trial, and then the government upped the ante. That's not the situation here at all, is it? It is not the situation in the sense of, and I agree with Your Honor's description of the Supreme Court precedent, that yes, it's tougher in a plea bargain situation to make this case agreed. Here, however, the difference is that the typical run-of-the-mill plea is plea guilty of this lesser charge, and if you don't, we will either charge you with something more serious, or we will seek more serious charges. And we will do that over time for the same charge. That's not what we have here. What we have here is a decision not to charge someone with the crimes that they believed that she committed, but rather to, because they were unhappy with the exercise of the constitutional rights, they go after what we say in the brief, is the low-hanging fruit. And the low-hanging fruit is something that they had clearly made a decision within at least four years prior to the indictment not to prosecute. All right. Could I ask another question? Of course, of course. Could we talk about the rebuttal closing argument? Sure. So that is, as we said in the brief, that was highly prejudicial, this argument that there was only a one in nearly 60 million chance of her defense being true, and there are two fundamental principles at work here. One is the prosecutor can't rely on facts, not on evidence, and the prosecutor can't make an argument that would confuse the jury as to the burden of proof. So is your strongest argument here that while the government argues it grounded this argument in testimony of these two witnesses, in fact, those witnesses only addressed part of the relevant area, that we had no idea what other glitches there might have been in the Department of Justice? So the one in six million is a false number? Correct. One in 60 million is a false number because the evidence was incomplete, number one, as we set forth in the brief, that nobody testified, there wasn't testimony about all the other problems that there might have been, there were only scattered testimony from the two witnesses, as Your Honor points out. And as we say, there was no testimony that every single problem that was identified would, in fact, be investigated. So that's the first thing. Yes, a lack of evidence. There was a failure of proof, number one. Number two, there was no expert testimony, which there had to be, and in that we rely on the Ferreira decision from the Massachusetts Supreme Court, because once you're talking about this kind of mathematical calculation, you need an expert testimony. And number one, and number two, if there is no expert, the defendant, in this case, was deprived of her opportunity to make a Daubert challenge. And there should have been expert testimony, and this type of argument needed expert testimony, and there was none. So your argument is that the case hung on what was her intent, and therefore, this evidence went to the heart of the case? That's correct. There were two competing views here. One was that the government said she intended to defraud the D.C. government. She said it was a mistake. And given these stark choices, the jury, clearly, there was a significant danger of jury confusion here, and it was prejudicial. And the probability argument erroneously equated proof beyond a reasonable doubt with the numerical probability of guilt, which both of them. Unlike some of the cases that you cite, all state cases, the prosecutor didn't say, and therefore, there's guilt beyond a reasonable doubt. Didn't tie the two together. Is that right? In those cases, the prosecutor clearly did tie the probability analysis to the beyond reasonable doubt. Yes, and I think that happened here, as well. Implicitly? Only implicitly. Is there an express? I didn't see anywhere where the court said, where the prosecutor said that. I would agree that the prosecutor didn't use the word, didn't, he was talking about, her story has a 1 in 60 million chance of being true. He didn't say, therefore, there can't be, he didn't follow that up with the next sentence. In the other cases? No, not exactly. The other cases, no. Not precisely. No, not precisely what? Well, they were saying, so the two, and the two other, the Ferreira case had to do with eyewitness identification and using two six-person, or six-photo, two different photo arrays. I believe that the courts, that in that case, the prosecutor actually said, and therefore, it's true. Yeah, I believe that's true. Moral, I don't know if you said it precisely, but yes, effectively. On the need for an expert, we don't have a case like that, right? You do not. And I take it no federal court does, or you would have cited it? We would have, not on the need for an expert, but I would say that the other two cases we did cite were not state cases, as Your Honor said, but there was a Fifth Circuit case, and a crim, and a case from the Navy and Marine Court of Criminal Appeals, which obviously is court-martialed, but nevertheless. The Fifth Circuit case said it has to be an expert for? No, it did not. No, but it rejected the statistical probability argument in the context of whether there was diversity jurisdiction. It was a class action, and it had to do with, it was a class action that had to do with where the class members resided. Not a criminal case? It was not a criminal case. So I'm only on the question of whether the error can be plain. I take it there was no objection? That is correct. So the question is whether the error can be plain, when not only do we not have a case, but the Supreme Court doesn't have a case, and no federal court has a case. That's sort of beyond our, you have a sort of a, in terms of we have a black letter, that there has to be a case, at least, on the subject that governs us. This couldn't be plain error. Well, we did say in the brief, we thought that this was a case of first impression on this argument, and it is, I believe, a case of first impression with regard to every element of it, including, so it can't be plain error. It could be error, but it couldn't be plain error. Do you understand this circuit, or the Supreme Court in Orlando, to define plain error as one element has to be a prior binding precedent, or prior precedent? I had not understood that until Judge Garland just said so. There's the answer. Sometimes things can be so gross. I'm just asking. I mean, I didn't read Justice O'Connor's opinion to say that. Maybe we said it, but I wasn't aware we had said it quite that bluntly. It's obviously a consideration and a factor. How would the judge know, if it's an open question in this jurisdiction, whether the prosecutor, in rebuttal closing argument, when the defendant has no opportunity to respond, hits on the key issue in the case based on evidence that's not in the record? I don't know. That's your argument, isn't it? That is our argument. Can you just, your footnote in your reply brief on page 12. This is, again, a little uncertain of your meaning. Are you conceding that the 6 and 60 million figures were supported by the evidence, and it's the one that was not? That's the part at the end of that that I didn't, I want to be sure I understood. We are not conceding that. So what do you mean by saying, thus, it is not that the 6 or 60 million were not supported by evidence? It's the one that was not supported by the evidence? I mean, I read that as a concession. It certainly wasn't intended as such. The prosecutor was, this was an argument clearly off the top of his head, and he was talking about, he was estimating keystrokes, and he was multiplying by the number of keystrokes by the number of entries. So I don't think there was any mathematical precision to the 60 million figure. And we are not conceding that that's accurate. Excuse me, I read that, and maybe I misread it, to mean that what you were saying was that there might have been other problems. And the assumption of 1 in 60 million was that there was only one problem. Correct. That is true. And we argue that elsewhere. Further questions? No. Okay, thank you. We'll hear from the government. Thank you. Good morning, Your Honors. May it please the Court. Catherine Kelly on behalf of the United States. If I may just touch briefly on the argument about the government's rebuttal argument. The District Court did not play any air in monitoring the government's rebuttal argument here. As the Court has said, there aren't any cases in the Federal Circuit's Superior Court or this Court that say that you have to either have an expert to do mathematics, or to talk about mathematics in a closing or rebuttal argument. And there aren't binding cases that say that the government or any attorney can't use mathematics or needs an expert to do so. No question that the Supreme Court precedent that you have to base your closing argument on the evidence in the case. That's correct, and that was absolutely done here, as we pointed out in our brief. But you would agree that your two witnesses did not address the possibility of other problems with the computer system. Is that not correct? What they did address, Mr. Luperiello... Is that a yes or no? I believe that they did, yes, Your Honor. How did they address other problems in the system? Director Luperiello testified, which is at page SA95 of our appendix, that the type of error that the defense counsel was suggesting in this case would have been something that would show up in annual audits, had it existed. I totally agree with you. The question is, were there other problems with the system? Because the argument to the jury was, this is one in 60 million. That's all I'm getting at. That's correct. The point is that there wasn't any evidence of any other errors in the system. And certainly errors like this... There weren't. That's all I'm asking. The point that was being made by Mr. Nguyen and Mr. Luperiello was that there was no evidence of this particular problem. It related specifically... The defense's computer glitch argument related specifically to the answer to one question on her claim forms for unemployment benefits. See, the government argues to us, this case is overwhelming. So I thought to myself, why would the prosecutor in rebuttal closing risk a conviction using an argument that's not grounded in the evidence? I don't know why you're pressing this point quite so. I totally agree as to what the witnesses did testify to. But that's not what the closing rebuttal argument was based on. You say in your brief, grounded in the evidence. Grounded and then a big leap. I don't believe it was a big leap, Your Honor. If anything, it was a reasonable inference given the evidence that did come in at trial that this was, as Ms. Meadows was trying to argue, this is the only error that kept happening in my claims was this answer to this one question, which we believe is ultimately where the prosecutor was going with his reference to one. And as for the other numbers, as the prosecutor was trotting out during his argument where the numbers that supported that came from, for instance, the 20,000 claims per week, multiplying that by 49 weeks' worth of claims and ultimately coming up with the number of fields that someone would have to fill in in making those claim forms, that's where he got those probabilities. So if anything, it was a reasonable inference at most. And in any event, as we said, there isn't legal binding authority saying that you have to ground this in expert testimony or that math arguments are not allowed. And certainly in this case, there wasn't any prejudice or serious effect on the fairness or integrity of the trial. Can I ask you? Certainly, Your Honor. Your position is, let's go with the 6 million rather than the 60 million, that because empirically there was only one error in 6 million, the odds of it being a consequence of a computer error is 1 in 6 million. Is that your position? Is that where he comes down to? Right. What the prosecutor was arguing was essentially that there's a 1 in 6 million chance. And that's because empirically, if I give you every possible inference, you've only found one error in 6 million, right? That's correct. The only error that appellant was claiming here was— Was that merely a statement of probability? That seems to me a statement of rate, not a statement at all about probability. If I have a bag and I pick out one red ball once, or I roll a dice and it comes up six, one out of 100 times, are you saying the probability is one out of 100 times? We know that's not how you calculate probability for the roll of a dice. That's correct. So the prosecutor is completely wrong with respect to the argument that the odds, that the probabilities are 1 in 6 million because the empirical consequence, as observed, was 1 in 6 million. Isn't that right? Isn't the prosecutor completely wrong in saying that this is a probability question? I think what he was trying to do was just state it in terms that a jury would understand, and whether or not he's absolutely mathematically correct is probably another question. You agree that now that we think about this, that the way of deciding the probability, you have to know something about how the computer works, not about what the results are. The fact that even if we completely agree with you that it only happened once in 6 million times, he could have said, well, it only happened once in 6 million times. But he couldn't say the probability was 1 in 6 million, could he? Perhaps Your Honor is correct in saying that it's a rate rather than a probability. But I think ultimately the point that the prosecutor was making, which he did state specifically, was that he was using these numbers to show that the likelihood of this type of computer glitch the defendant was claiming having taken place, the chances of that occurring were astronomical. He was saying that he was speaking broadly, and he was using these numbers to show that it just wasn't reality. So his point is still well taken, even if he's not exactly using mathematical terms correctly and so forth. Obviously, this was a rebuttal argument and wasn't something that had been clearly thought out. And that's the other problem. There's no chance for the defendant to respond. Well, ultimately, all that really the defendant... No, I mean, it's a gotcha argument. It's an argument that was very similar to the argument that was made in closing, which is that there's really just no chance that what Ms. Meadows is saying about this computer glitch is correct. It's a comment on her credibility. It wasn't a comment on proof beyond a reasonable doubt. It wasn't equating those statistics to proof beyond a reasonable doubt. It was really just taking the closing... So it's a comment on her credibility. That makes it worse, doesn't it, as far as ERA is concerned? No, I don't believe so. At any time you have a defendant putting on a defense, you're questioning credibility of witnesses very often in a case. That is not a comment to say that the government's burden of proof is lessened in any way or to say that the prosecutor here never made any attempt to say anything along the lines of the numbers that I've just stated to you show that the government has proven its case beyond a reasonable doubt. That's what's going on for ERA. You cannot accept the defense. It's crazy. It's 1 in 60 million. And you could say that with or without the numbers, regardless of whether the numbers were there. But we're stuck with the numbers because that's what the prosecutor chose to do on rebuttal argument. The prosecutor chose that, to use the numbers, certainly. But, again, even if the court was to find an error occurred, it's certainly not plain under the current law, which this court requires in Sumlin. Do you regard cases to require a precedent on point? They don't necessarily require a precedent on point. But what Sumlin says is that the error needs to be clear under current law. And given the state of the law, given that there's no cases in this court, no cases that we know of in other federal courts or in the Supreme Court, it's certainly not clear under current law. The case for Massachusetts that the defense relies heavily on is not like this case at all. That was clearly a situation where the prosecutor was equating a mathematical argument with proof beyond a reasonable doubt, and it was under very different facts. Any case is going to be factually distinguishable. It's the question of law that was decided by the Supreme Judicial Court of Massachusetts that the appellant is relying on. Well, one of the most important factors that the court looked at in that case in Massachusetts was the fact that the prosecutor had made a comment on the reasonable doubt standard. No question about it. The holding was if you're going to make these mathematical arguments, you need an expert. And that's the holding based on Massachusetts law. That's right. But that's not the law that is in play in this court. It's not the case that the defendant was disabled from responding to this. The defendant could have objected during the rebuttal, right? That's correct. There was no objection. That's why we're on the plain error review standard here. And I think it's important to note, too, that the jury instructions that were given by the court alleviated any concern of potential prejudice. And even what the prosecutor said himself was just that he's saying that this is just to show that the chances are astronomical that this computer glitch could have happened. The court, again, told the jury that the statements and the arguments of the attorneys are not evidence, that it could only consider the trial evidence, the witness testimony, the admitted exhibits, and the stipulations in its deliberations. If any reference to the evidence differed from the jury's recollection of the evidence, it was the jury's recollection that controlled. And it was, again, the jurors were the sole determiners of the witness's credibility. And particularly in this situation where ultimately you have the district court sentencing, finding that Ms. Meadows perjured herself based on her computer error testimony, it's very highly unlikely that the jury, had it not heard numbers in the rebuttal argument, would have credited the defendant's computer glitch argument. Of course, that's a preponderance finding, isn't it, counsel? It is, but it does give some indication of how the witness's credibility came about. Your version was beyond a reasonable doubt. It's not beyond a reasonable doubt, but it is certainly an indication of how the court, who heard the entire trial, was viewing the testimony about the computer glitch that Ms. Meadows presented. And given that, it's highly unlikely that the jury was swayed to disbelieve the defendant just based on calculations of numbers in the rebuttal argument. May I turn to the argument? This is of no importance, but I do want to see if I understand. Let me use number one out of six. I thought, wasn't her testimony that she filled out not only the question about whether she was employed, but also how much she got? That was all in response to question number two. If you said, did you work this week, and you answered yes, then it prompted you to add in how much your wages were for that week. So it was almost a question 2A and 2B. The $60 million had something to do with keystrokes, right? Yes, because the prosecutor went on not to just say these are the six questions that were answered, but she also filled in different fields, including her name, her Social Security number, and so forth, and was adding up the number of letters and numbers, if you will, in adding that additional information to the six questions, and that's where he came up with the $60 million number. Okay. Well, what about all the keystrokes and filling out the amount of? That would have all been on the documents that were in evidence. The claim forms that were submitted by the government in evidence would have shown the information in the fields that she filled in in responding. Why don't those keystrokes count? I think that's what the government was saying, that those do count. No, the ones on how much she earned. She said that she filled in. I guess those would, too. Yes. I'm not certain. Some number larger than one. Her argument is that they didn't count all of her other keystrokes. Yes, given I believe she was testifying that her salary was somewhere in the hundreds of dollars, so there's three other keystrokes that are missing from her answer. I'm not saying it's material, but I want to see if I understood what you're saying. I think Your Honor is correct about that, yes. Your Honor, also the district court properly denied the motion to dismiss the inquiry. I'm sorry, Your Honor. Lots of confusion. And I think that just goes to the fact that this is something that the prosecutor thought of off the cuff in preparing his rebuttal argument. I don't think it's off the cuff. I give the prosecutor a lot more credit than that. This is an issue that's been around for a long time. If I may turn to the motion to dismiss the indictment due to the alleged prosecutorial vindictiveness. What this court is looking at here is determining whether or not the district court committed clear error, and the court below only commits clear error if this court is left with the firm and definite conviction that a mistake has been committed. But what happened in this case is the district court clearly looked at the arguments presented by the defendant and the chronology of the defendant's history with the U.S. Attorney's Office, properly recognized under the Meyer decision that the mere chronology of the case was not enough, recognized that the defendant would need to show something more than that chronology, the fact that she was prosecuted after rejecting plea offers, and noted that in this case the defendant was saying the extra something is the fact that there are people that I am saying are similarly situated that are not being prosecuted for this crime. The court looked at that and found that there was a lack of evidence that the other people who were actually referred to the United States Attorney's Office were similarly situated to the defendant. And based on that, based on the additional facts that neither of the plea offers that were offered by the government were conditioned on her cooperation, and that in fact the second plea offer was to reduce charges to two misdemeanor counts, again showed a lack of vindictiveness. The court also appropriately accepted the objective evidence that the government put forward saying that it brought more severe charges because this was a case where Ms. Meadows had filed two annual unemployment claims and then had gone 49 weeks in a row making individualized claims, filing them, filings for benefits. And that was all going on at the same time that she was allegedly involved in bringing contraband into the D.C. jail. It was because of all those circumstances that the prosecutor, having learned of the unemployment fraud through the separate concrete playground investigation of the correctional officers at the jail, chose to indict her for the six felony counts. And for all those reasons, there's no basis to find that the district court committed any clear error in determining that there was no prosecutorial vindictiveness in this case. I have a question about one argument made by the district court, and that is that by the time she was indicted, the government had won its other cases. And so the court argues one cannot conclude that the charges were lodged in an effort to shill the defendant's exercise of her constitutional rights, assuming that constitutional rights are actually involved. But that seems a narrower notion of vindictiveness than what was claimed by the defendant here because she seems to argue that the government was trying to punish her. Punishment can just look to either sending a warning to people, generally, that they won't get away with this sort of thing, or it could be genuine vindictiveness. She's made us so mad, we want to inflict pain on her. So that seems unresponsive to the defendant's argument. I think the point that the court was trying to make, and I believe she was citing the Maddox case in doing so, was that to express it was difficult to conclude that the government acted vindictively by charging the appellant with unemployment fraud when both the Petrovic murder case and any dealing she had to do with that and the targets of the concrete playground investigation had been convicted by the time the government even made the misdemeanor plea offer to her, let alone the charge. Even if it's not a direct response, that was only one of the points the court was making. I wouldn't want to be standing here hanging my hat on that being the crux of the decision. The Maddox case was quite different than the situation we have here. But that was just one of a number of points the court was making. As I've said before, it was the chronology, the fact that there wasn't a showing of similarly situated defendants and that there were these plea offers that went from a higher charge to a lower charge, and it was only quite a while after that that she was prosecuted here. And so the court found both that there was a failure to show a presumption of vindictiveness. The defense counsel asserted at the motions hearing that she was not going to pursue an actual vindictiveness claim. And then the court went on, despite that, to then say that the government, indeed, if there was any possible presumption, had, in fact, overcome that presumption with objective evidence justifying the charging decisions here. And as the court is aware, the government showing is a minimal requirement there. It just has to be some objective evidence. Is there further questions from the bench? Thank you. Thank you, Your Honors. No time left, but we'll give you a couple extra minutes anyway. Thank you, Your Honor. In response to Judge Williams' last point with regard, and counsel is correct, that the district judge was referring to the Maddox case, but this was an error that we argued in our brief, which is the district judge has the chronology wrong. And the point being that, and the Supreme Court cases talk about this as well, the idea is that it's not a – it's not that the charging decision is intended to chill future exercise of constitutional rights. The idea is that the charging decision is designed, as Your Honor said, to punish the prior exercise of constitutional rights. So to the extent that the district judge got the chronology wrong, which we believe that she did with regard to the Maddox case. Correct. That's a better way to put it. Yes, Your Honor. Not to cooperate independently of that or other well-known rights? I don't know of one stating it in those terms, but we would say that the constitutional – that the privilege against self-incrimination encompasses the decision not to cooperate. But that's – if you qualify, it could be use immunity and so forth. Particularly, you would say that in the absence of use immunity, which they were not offering, it would be a violation of constitutional rights to compel cooperation. Correct. That's our position. And if the Court has no further questions, we will rest on our brief. Okay. Thank you very much. We'll take the next case. We'll take this one under submission. Case number 14-1226 at Elm. I'm sorry. Oak Harbor Freight Line. Oh, yes. I'm sorry. I'm sorry. I'm sorry. I'm sorry. Just one moment. I forgot. Yes, Mr. Wayne. You were appointed by the Court, and we are grateful for your help in this case.
judges: Garland, Rogers, Williams